**In re COLLIER, et al.**

[Cite as *In re Collier* (1993), 85 Ohio App.3d 232.]

Court of Appeals of Ohio,
Athens County.

No. CA–1543.

Decided Jan. 28, 1993.

Robert R. Jones, Assistant Athens County Prosecuting Attorney, for appellant.

Sowash, Carson & Shostak and Beth B. Ferrier, for appellee Karen Collier.

Mollica, Gall, Sloan & Sillery and Robert J. Gall, for Roger Pedigo, guardian ad litem.

HARSHA, Judge.

Athens County Children Services ("ACCS") appeals from a judgment entered by the Athens County Court of Common Pleas, Juvenile Division, overruling its motion to extend for an additional period of six months the court's previous orders of protective supervision for Patricia Collier, Macel Collier, and Summer Lewis.

Appellant assigns the following errors:

"I. The trial court erred in ruling that no further extensions of the orders of protective supervision are permitted by the statute, and in denying the motion of ACCS which requested the extension.

"II. The trial court erred and abused its discretion in excluding from evidence records and reports of the Nelsonville Police Department.

"III. The trial court erred and abused its discretion by not permitting cross-examination of Mr. Lewis upon his willingness to follow through on recommended services."

In 1990, ACCS filed complaints that alleged that the three minor children were neglected and dependent. Upon agreement of the parties, the children were adjudicated dependent and temporary custody of the children was awarded to ACCS. Subsequently, the trial court, upon written motion of appellee Karen Collier, their natural mother, terminated the temporary custody order, returned the children to her and Eugene Lewis, the father of Summer Lewis. The court also issued orders of protective supervision for the children.[1]

On October 7, 1991, appellant filed a motion to extend the orders of protective supervision for the children. The trial court granted the motion for a period of six months from December 9, 1991. On June 1, 1992, appellant filed a second

---

1. This court affirmed the trial court's judgment entry in In re Collier (Feb. 4, 1992), Athens App. No. CA–1494, unreported, 1992 WL 21229.

motion to extend the protective supervision orders for another six months because the "home situation of the children" had "not been stabilized" due in part to fighting and arguing between appellee Karen Collier and Lewis, which placed the children "at risk." Roger Pedigo, the guardian *ad litem* for the children, issued a report which recommended that the trial court grant appellant's motion to extend the protective supervision orders.

At the conclusion of an evidentiary hearing on appellant's motion, counsel for Lewis argued that the trial court did not have "jurisdiction to extend [protective] supervision a second time." On June 26, 1992, the trial court overruled appellant's extension on the basis that the original protective supervision order was more than one year old and the last extension was obtained on July 12, 1991, which was more than six months earlier. The trial court further noted:

"Ohio Revised Code Section 2151.353(G) specifically limits the times within which Athens County Children Services can extend Orders of Protective Services. In these cases those orders have been in effect an amount of time whereby they cannot be extended any further. The same terminate by operation of law. The MOTION to extend these orders is hereby over-ruled [*sic*] and denied."

Appellant's first assignment of error asserts that the trial court erred in denying its motion on the basis that no further extensions of the orders of protective supervision were permitted by the statute. Because of apparent dissatisfaction with the results of prior legislative efforts and in order to ensure Ohio's compliance with federal mandates, the General Assembly enacted Am.Sub. S.B. No. 89, effective January 1, 1989 (142 Ohio Laws, Part I, 198), which provided comprehensive changes in the laws governing neglect, dependency, and abuse proceedings. Kurtz & Giannelli, Ohio Juvenile Law (2 Ed.1989) 21, T 1.04. The overall intent of the legislation was to prevent "foster care drift" by, among other things, establishing maximum time limits under which children may remain in the custody of public and private child care agencies, and increasing the responsibilities of juvenile courts to review and oversee the permanency planning efforts of these agencies. *Id.* at 22; see, also, Legislative Service Commission Analysis of Am.Sub.S.B. 89, Baldwin's 1988 Laws of Ohio, at 5–5.71.

Protective supervision is an order of disposition in which the court permits a child to remain in the custody of his parents, guardian, or custodian and stay in his home, subject to any conditions and limitations upon the child, his parents, guardian, or custodian, or any other person that the court prescribes. It may include supervision as directed by the court for the protection of the child. R.C. 2151.011(B)(16); Kurtz & Giannelli, *supra*, at 176, T 13.06(A)(1)(a). Am.Sub.S.B. No. 89 provided the following time restrictions for protective supervision orders:

"(G) Any order for protective supervision issued pursuant to division (A)(1) of this section *shall terminate one year after the earlier of the date on which the*

*complaint in the case was filed* or the child was first placed into shelter care, *unless the public children services agency* or private child placing agency that prepared the child's case plan *files a motion with the court requesting the extension for a period of up to six months of the original dispositional order or the extension of a previously granted extension for an additional period of up to six months.* Upon the filing of the motion and the court's giving notice of the date, time, and location of the hearing to all other parties and the guardian ad litem, the court shall hold a hearing on the motion. If the court determines at the hearing that the *extension of the original dispositional order or of any previously granted extension* is in the best interest of the child, *the court shall issue an order extending the original dispositional order or previously granted extension* for an additional period of up to six months." (Emphasis added.) R.C. 2151.353(G).

■ The trial court overruled appellant's motion for an extension of its protective supervision orders in part based upon its mistaken belief that the last extension was obtained on July 12, 1991, which was more than six months prior to appellant's June 1, 1992 extension motion. A review of the record on appeal indicates that appellant filed its first extension motion on October 7, 1991, *i.e.*, prior to the one-year time limit following the initial neglect and dependency complaint filings on December 5, 1990. The motion was granted by the trial court for a six-month period by entry dated December 23, 1991, and appellant's second extension motion was filed prior to the expiration of that period. Although the trial court's entry refers to a July 12, 1991 extension of the protective supervision orders, that entry referred merely to a denial of appellant's request to reconsider modification of the dispositional order and no extension motion had been filed as of that date. Based upon the foregoing, which is not controverted by appellee Karen Collier or the guardian *ad litem* in their appellate briefs, the trial court erred in overruling appellant's second extension motion on this basis.

Nevertheless, it appears that an alternative basis for the trial court's judgment was the one proffered at the conclusion of the evidentiary hearing by Lewis' attorney, *i.e.*, that pursuant to the plain language of R.C. 2151.353(G), the trial court lacked the statutory authority to extend protective supervision for a second six-month period. Appellee Karen Collier contends that the "trial judge's interpretation of R.C. 2151.353(G) as limiting an order of protective supervision to an eighteen month period is reasonable based solely on the language of the statute," although she also ultimately "concede[s] that more than two extensions of an order of protective supervision are permitted." This issue involves the statutory interpretation of R.C. 2151.353(G).

■ In construing a statute, a court's paramount concern is the legislative intent in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589

N.E.2d 1319, 1322. Under Ohio law, it is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent. *Shover v. Cordis Corp.* (1991), 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461; *S.R., supra*, 63 Ohio St.3d at 595, 589 N.E.2d at 1323. In interpreting a statute, words and phrases shall be read in context and construed according to the rules of grammar and common usage. *Indep. Ins. Agents of Ohio, Inc. v. Fabe* (1992), 63 Ohio St.3d 310, 314, 587 N.E.2d 814, 817; R.C. 1.42. Courts do not have authority to ignore the plain and unambiguous language of a statute under the guise of statutory interpretation, but must give effect to the words used. *Wray v. Wymer* (1991), 77 Ohio App.3d 122, 132, 601 N.E.2d 503, 509. In other words, courts may not delete words used or insert words not used. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77, 80.

R.C. 2151.353(G)'s first sentence provides that any order for protective supervision shall terminate upon the earlier of one year after the date on which the complaint in the case was filed or the child was first placed in shelter care, unless the agency files a motion requesting the extension for a period of up to six months of the original dispositional order "or the extension of *a* previously granted extension for an additional period of up to six months." (Emphasis added.) The word "a" is an indefinite article that denotes a thing not previously noted or recognized, in contrast with "the," which denotes a thing previously noted or recognized. Webster's New World Dictionary (3 Ed.1988) 1. Even the most unlettered persons understand that "a" is indefinite, but "the" refers to a certain object. Black's Law Dictionary (5 Ed.1979) 1324. Accordingly, R.C. 2151.353(G), by allowing for the extension of "*a* previously granted extension" rather than merely "*the* previously granted extension," appears to permit additional six-month extensions of protective supervision orders beyond the initial extension of the original protective supervision order. This is further supported by the third sentence in R.C. 2151.353(G), which refers to "any previously granted extension." "Any" means one out of many, *i.e.*, an indefinite number. Black's Law Dictionary (5 Ed.1979) 86; Webster's New World Dictionary (3 Ed.1988) 62; cf., also, *S.R., supra*, 63 Ohio St.3d at 595, 589 N.E.2d at 1323, appearing to hold that statutory language referring to "any public office or agency" meant "every public office or agency." Therefore, the term "any" in R.C. 2151.353(G) means that there could be an indefinite number of extensions of protective supervision orders.

Additionally, we note that in the same legislative enactment that included R.C. 2151.353(G), the General Assembly expressly provided that "[n]o court shall grant an agency more than two extensions of temporary custody * * *." R.C. 2151.415(D)(4). It is apparent that by not including any similar limitations regarding protective supervision orders in R.C. 2151.353(G), an indefinite number

of extensions was intended, so long as the extensions were proven to the trial court's satisfaction to be in the best interest of the children. Therefore, we discern no ambiguity in R.C. 2151.353(G), and in applying the plain language of the statutory provision, appellant was not precluded from filing a motion requesting a second extension of the protective supervision orders.

Assuming, *arguendo,* that any ambiguity exists in R.C. 2151.353(G), the rules of statutory construction contained in R.C. 1.49 remove all doubt. See, *e.g., Westlake v. Mascot Petroleum Co.* (1991), 61 Ohio St.3d 161, 167, 573 N.E.2d 1068, 1073. R.C. 1.49 provides:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"(A) The object sought to be attained;

"(B) The circumstances under which the statute was enacted;

"(C) The legislative history;

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects;

"(E) The consequences of a particular construction;

"(F) The administrative construction of the statute."

As noted by appellant, the administrative construction of R.C. 2151.353(G) includes Ohio Adm.Code 5101:2–39–30, which expressly provides:

"(B) An order for protective supervision will terminate one year after the earlier of either the date on which the complaint was filed or the child was first placed into substitute care, unless one of the following is applicable.

"(1) The PCSA determines that continued protective supervision beyond the original dispositional order is in the best interest of the child, the PCSA files a motion requesting an extension of up to six months, and the court issues an order extending the original dispositional order.

"(2) The PCSA determines that continued protective supervision beyond the first six-month extension is in the best interest of the child, the PCSA files a motion requesting an additional six-month extension, and the court issues an order extending the previously granted extension. *There is no statutory limit to the number of extensions for protective supervision that may be granted.*" (Emphasis added.)

The foregoing does not conflict with the overriding legislative intent of Am.Sub. S.B. No. 89 to establish maximum time limits under which children may remain in the custody of public and private child care agencies, since an order for protective supervision allows the parents to retain custody of their children. Therefore, as

even appellee Karen Collier concedes, the trial court erred in holding that R.C. 2151.353(G) did not permit appellant's second motion to extend the protective supervision orders. Appellant's first assignment of error is sustained.

Appellant's second and third assignments of error attack the trial court's rulings at the evidentiary hearing to determine if the requested extension was in the best interest of the children. Pursuant to our ruling on appellant's first assignment of error, we agree with the guardian *ad litem* that our consideration of the merits of these assignments of error would be either moot or premature. See App.R. 12(A)(1)(c) and Staff Note to the July 1, 1992 amendment of that rule. See 64 Ohio St.3d at CXXXVII and CXXXVIII. Appellant and appellee Karen Collier contend that we should reach these issues because the evidence, as a matter of law, supports their respective positions. Although a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as the basis thereof, *Joyce v. Gen. Motors Corp.* (1990), 49 Ohio St.3d 93, 96, 551 N.E.2d 172, 174, as the guardian *ad litem* states, the trial court never considered the evidence, since it based its erroneous ruling solely on its misinterpretation of R.C. 2151.353(G) and when it had granted a prior extension motion. It appears that the trial court's determination of whether protective supervision should be extended because of the best interest of the children is within its discretion. In reviewing the propriety of a trial court's exercise of discretion, reviewing courts are guided by the presumption that the findings of the trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 138, 566 N.E.2d 1181, 1184. Because of the trial court's erroneous ruling, it has never exercised its discretion, *i.e.,* never weighed the credibility of the witnesses. Moreover, a cursory review of the evidence indicates that more than one conclusion could be drawn by the trier of fact as to whether an extension is required for the best interest of the children. Accordingly, since a trial court's ruling based upon the evidence may render moot the issues raised in appellant's second and third assignments of error, we will not issue what would be tantamount to an advisory opinion concerning them. See App.R. 12(A)(1)(c).

Accordingly, for all of the foregoing reasons, appellant's first assignment of error is sustained, the judgment of the trial court is reversed, and the cause is remanded for a determination of the evidentiary merits of appellant's R.C. 2151.353(G) motion to extend the protective supervision orders.

*Judgment reversed*
*and cause remanded.*

PETER B. ABELE and GREY, JJ., concur.