OPINION
{¶ 1} Plaintiff-appellant, the Village of McDonald, Ohio ("the Village") appeals from the judgment of the Niles Municipal Court, finding in favor of appellee, Karen Krok Humeniuk ("Humeniuk"). The trial court held that the Village could not collect on back taxes and penalties allegedly owed by Humeniuk due to the expiration of the applicable statute of limitations. We affirm the judgment of the trial court.
 {¶ 2} On September 9, 2002, the Village filed a complaint in the trial court, which alleged that Humeniuk, a resident of the Village, failed to pay in full her income tax liability for the years 1994, 1995, 1996 and 1997, resulting in a total liability, including interest and penalties, of $7,122.96. In her answer, Humeniuk denied all of the Village's allegations, and asserted three defenses; payment, accord and satisfaction, and that the Village was barred from recovery for failing to bring action within the three year statute of limitations.
 {¶ 3} On June 3, 2003, a trial was held. Prior to closing arguments, the parties agreed to submit trial briefs.
 {¶ 4} On July 10, 2003, the trial court issued judgment in favor of Humeniuk, noting that the action was filed outside of the statute of limitations. The Village then filed a motion for findings of fact and conclusions of law with the trial court.
 {¶ 5} On July 22, 2003, the court issued instructions to both parties to submit proposed findings of fact and conclusions of law. On March 16, 2004, the court adopted Humeniuk's findings of fact and conclusions of law.
 {¶ 6} The Village timely appealed the judgment, asserting the following as its sole assignment of error:
 {¶ 7} "The trial court abused its discretion to the prejudice of Appellant by applying a statute of limitations, notwithstanding Appellee's partial payments, reaffirmations of her ability to pay, and unequivocal promises to pay, which represent absolute and unqualified acknowledgements of her tax obligation due and owing to Appellant, confirm Appellee's promise (made by and through her attorney), her intent to pay, and toll the running of any statute of limitations."
 {¶ 8} An appellate court's review of the interpretation and application of a statute is de novo. Akron v. Frazier (2001),142 Ohio App.3d 718, 721. Additionally, an appellate court does not give deference to a trial court's determination in making its review. Id. "In interpreting a statute, a court's principal concern is the legislative intent in enacting the statute." Bd. of Park Commrs. of LakeMetroparks v. Norfolk and Western Ry. Co. (1999), 131 Ohio App.3d 412,417, citing State v. S.R. (1992), 63 Ohio St.3d 590, 594. Under Ohio law, a court must first look to the language of the statute itself to determine the legislative intent. Id. (citations omitted).
 {¶ 9} Both parties agree that the Village Codified Ordinances, Sections 183.10, et. seq. govern. Section 183.11(a) of the Village Codified Ordinances states: "[a]ll taxes imposed by this chapter shall be collectible, together with any interest and penalties thereon, by a civil action at law. All additional assessments shall be made and all civilactions to recover municipal income taxes and penalties and interestshall be brought within three years after the tax was due or the returnwas filed, whichever is later." (Emphasis added). The language of Section183.11(a) of the Village Codified Ordinances, substantially tracks R.C.718.12, which also provides for a three year statute of limitations in the filing of an action to recover back taxes, penalties, and interest. Thus, the Village had three years to file a civil action to recover taxes and penalties allegedly owed by Humeniuk.
 {¶ 10} The record before this court shows that Humeniuk lived in the Village for the entire period at issue. During this time, Humeniuk was employed by Delphi Packard Electric in Howland Township, Ohio. Humeniuk's W-2 forms, which were introduced at trial, show that her mailing address was listed as a Post Office Box in Niles, Ohio. Accordingly, local taxes were withheld by Humeniuk's employer and paid to the City of Niles. The record also shows that Humeniuk timely filed income tax returns to the Village for the same period, and wrote checks for what she believed was the remaining balance of her tax liability. The following chart shows the payments as calculated and made to each municipality for the relevant time period:[1]

 Year Village Tax Due Tax Paid to City Village Tax Paid
 1994 $815.82 $617.66 $203.92
 1995 $770.33 $577.79 $192.54
 1996 $819.69 $614.85 $204.84
 1997 $815.82 $611.85 $204.17

{¶ 11} On June 17, 1998, the Village discovered the error and sent a form letter to Humeniuk indicating that she needed to contact her employer to withhold local tax at a rate of 2% for the Village of McDonald. On June 25, 1998, Humeniuk's attorney contacted the Village's Income Tax Division via letter to try to resolve the problem of back taxes and penalties. The letter indicated that the City of Niles agreed to refund the taxes Humeniuk paid for the years 1995, 1996, and 1997.[2]
The letter further stated that, "[t]he penalties and interests (sic) compiled by the Village of McDonald should not be a factor since it has taken your office over four years to discover the mistake." (Emphasis added).
 {¶ 12} On July 29, 1998, Barbara Urban ("Urban"), the Tax Director for the Village, sent a letter to Humeniuk's attorney, which indicated that it was Humeniuk's responsibility to file tax returns and make payment of delinquent amounts. The letter further stated that "Ms. [Humeniuk] had no reasonable explanation for * * * not filing these tax returns."
 {¶ 13} On January 22, 1999, Humeniuk, through her attorney, sent a letter to the Village, along with a check in the amount of $1,804.49, which represented the amount of income tax incorrectly withheld by her employer and paid to the City of Niles for the years 1995, 1996 and 1997.[3]
 {¶ 14} The record indicates no further contact between the Village and Humeniuk until November of 2001, when Humeniuk's attorney responded to the Village regarding a "recent statement to them indicating a tax arrearage of $617.46 (representing the unpaid 1994 balance) and interest and penalties of $5,290.45." The letter indicated that Humeniuk disputed these amounts and requested a hearing to resolve the issues. The case at bar was not filed until September 9, 2002. Thus, by the time the initial error was found until the time the instant action was filed, over seven years had passed since Humenuik filed her 1994 income tax return in March of 1995, and over four years had passed since the filing of her 1997 return in April of 1998.
 {¶ 15} The Village asserts that Humeniuk made three remittances, all of which served as an absolute and unqualified acknowledgement of her income tax obligation. In essence, the Village claims that Humeniuk's payments served as her reaffirmation of the total amount due pursuant to an unwritten "contract" under R.C. 2305.07 and served to toll the running of the statute of limitations under R.C. 2305.08. We disagree.
 {¶ 16} "The purpose of statues of limitation is `* * * to encourage diligence in the enforcement of demands.'" Rowe v. Bliss (1980), 68 Ohio App.2d 247, 249 (citation omitted). Moreover, "[w]here [a statute of limitation] is free from ambiguity, courts are to avoid giving it any other construction other than that which the words demand." Id.
 {¶ 17} R.C. 2305.07 is a general statute which applies to unwritten contracts and general statutory liabilities. The statute states, in relevant part, "[a]n action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeitureor penalty, shall be brought within six years after the cause thereof accrued." (Emphasis added).
 {¶ 18} R.C. 2305.08, entitled "Partial payment," provides that "[i]if payment has been made upon any demand founded on a contract, or a written acknowledgment thereof, or a promise to pay * * * an action may be brought thereon within the time limited by section * * * 2305.07 * * * after such payment, acknowledgement, or promise."
 {¶ 19} A reading of the plain language of R.C. 2305.07 indicates the statute applies to both verbal contracts and general statutory liabilities. However, the language specifically excludes those liabilities that are in the nature of forfeitures or penalties. Thus, even assuming, arguendo, we accept the Village's argument that the re-affirmation principles of R.C. 2305.08 applied to toll the statute of limitations, the statute would still not apply to the penalty portion of the past due taxes.
 {¶ 20} Furthermore, courts make a distinction between general statutes of limitations, which relate to remedies and special statutory provisions, "creating and qualifying a given right if exercised within a given time." Cincinnati v. Bossert Machine Co. (1968), 14 Ohio App. 2d. 35, 37. Special provisions are those in which "the time limitation is an inherent part of the statute, so that after the time runs the right is extinguished." Id.
 {¶ 21} The Ohio Supreme Court has indicated that R.C. 718.12 is a special statutory provision. See, Cincinnati v. Thomas Soft Ice Cream,Inc. (1977), 52 Ohio St.2d 76 (holding that under R.C. 718.06(B) [now R.C. 718.12(B)], the statute of limitations of six years for the prosecution of willful tax evasion was a special exception to the general criminal statute of limitations contained in R.C. 2901.13). We believe the same logic applies to the argument before us. Adopting the six year statute of limitations of R.C. 2305.07 by interpreting a tax liability as an unwritten "contract" would render the 3 year statute of limitations of R.C. 718.06, or its analogous local ordinances, meaningless.
 {¶ 22} Furthermore, if we were to accept the Village's argument that an individual taxpayer could "reaffirm" antecedent tax liabilities under R.C. 2305.08 by making a partial payment, it could theoretically create the result of a perpetual statute of limitations, and might actually discourage individuals from keeping payment of their tax obligations current. As the United States Supreme Court has aptly stated, "a statute of limitations is an almost indispensable element of fairness as well as of practical administration of an income tax policy." Rothensies v.Elec. Storage Battery Co. (1946), 329 U.S. 296, 301. We adhere to the Court's sound wisdom here. The Village's sole assignment of error is without merit.
 {¶ 23} The judgment of the Niles Municipal Court is affirmed.
O'Neill, J. and O'Toole, J. concur.
[1] The "Village Tax Due" figures are taken from Humeniuk's Tax Return as calculated for the respective years. The "Tax Paid to City" figures are the amounts which were withheld by Humeniuk's employer and paid to the City of Niles. The "Village Tax Paid" figures represent the amounts remitted by check with Humeniuk's Village Tax Returns when they were filed. Any differences between the actual tax liability as calculated and the amount remitted are minor, and appear to be errors in calculation on the return.
[2] "Ohio municipalities `have the right to exercise all powers of local self-government and may adopt and enforce such local regulations that are not in conflict with the general law * * * [i]ncluded within the above grant of authority is the power of taxation.'" Fisher v. Neusser,74 Ohio St.3d 506, 507, 1996-Ohio 172 (internal citations omitted). This power is "subject to `pre-emption by the General Assembly of the field of income taxation and subject to the power of the General Assembly to limit the power of municipalities to levy taxes * * *.'" Id. citing Angell v.Toledo (1950), 153 Ohio St. 179, at paragraph one of the syllabus. We note that R.C. 718.12(C) provides that "[c]laims for refund of municipal income taxes must be brought within the time limitation provided in division (A) of this section." Thus, Humeniuk was barred by the three-year statute of limitations from recovering taxes paid to the City of Niles in 1994.
[3] Two other payments were made subsequent to this payment. Evidence shows that the first payment, in the amount of $113.48, paid on April 15, 2002, was for payment of Humeniuk's husband, John's, tax liability for the year 2001. By this time, Humeniuk was not working. A third payment of $113.48 was paid by check on September 15, 2002, in response to a notice sent by the Village's Income Tax Division, which was sent to John on July 5, 2002. This amount was misapplied to Humeniuk's alleged outstanding tax liability.